UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CAROL EVANGELISTA, | ) | |
| Petitioner | ) | |
| | ) | CIVIL NO. 04-40143-NMG |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |
| | ) | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. §2255

### Introduction

The United States of America, by Michael J. Sullivan, United States Attorney, and Mark J. Balthazard, Assistant U.S. Attorney, for the District of Massachusetts, hereby files this memorandum in opposition to petitioner Carol Evangelista's motion under 28 U.S.C. §2255. Evangelista's petition asserts that her Sixth Amendment rights were violated when the Court enhanced her sentence under the Sentencing guidelines based on the amount of loss caused by her offense and because her offense involved a misrepresentation or fraud in connection with a bankruptcy proceeding.

The government opposes this petition because it fails as a matter of both fact and law. Evangelista's claims are procedurally barred because she failed to raise them at sentencing or on direct appeal. Her arguments are based almost exclusively on Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531 (2004), however Blakely does not apply to the U.S. Sentencing Guidelines, nor does it apply retroactively to collateral proceedings. Finally, Evangelista's

claim is built on the false premise that she did not admit to facts
necessary for the Court to have applied the sentencing
enhancements. However, the record makes plain that she did admit
to such facts and thus her claim would fail even if it had been
preserved and <u>Blakely</u> were to apply. For these reasons, as
discussed in detail below, the Court should dismiss Evangelista's
petition.

## Facts And Prior Proceedings

On October 21, 2003, Evangelista was charged in an Information
with one count of bankruptcy fraud in violation of 18 U.S.C.
§152(1) for concealing approximately $94,500 from her bankruptcy
creditors and trustee. PSR ¶¶1-2. On November 20, 2003, she
pleaded guilty without an agreement. PSR ¶¶ 3, 6. On February 24,
2004, she was sentenced to twelve months and one day in prison.
2/24/04 Tr. 50 (copy attached). Evangelista did not appeal her
conviction or sentence.

### 1.   Plea Hearing and Offense Conduct

During the plea hearing, Evangelista admitted to the accuracy
of the following statement of facts as presented orally by the
prosecutor:

> If the case were to go to trial, the government would
> present evidence that Miss Evangelista lives in West
> Boylston, MA.   In or about August 2001, she reached a
> divorce settlement with her ex-husband which required him
> to pay her $110,000 plus $1,000 per month for child
> support and an additional $1,000 per month, although it's
> not clear if that's for alimony or some other payment.

2

On August 6 of 2001, her ex-husband issued two checks, totaling $110,000, made payable to Ms. Evangelista's divorce attorney. Later that month, August 28, at Ms. Evangelista's direction, the attorney issued a check in the amount of $94,500 to Ms. Evangelista's father. He deposited that check into a joint personal checking account with her mother, and several days later her mother issued a check for $90,000, which was used to buy a Certificate of Deposit at the Spencer Savings Bank for the benefit of Ms. Evangelista.

The next month, on September 20, 2001, Ms. Evangelista filed a Chapter 7 bankruptcy petition in Worcester. She was represented by counsel in that case. That was case 01-45859. She did not tell her bankruptcy attorney about the money she had received in the divorce settlement, nor that she was receiving $1,000 in additional payments, payments above and beyond the child support payments from her ex-husband.

11/20/03 Tr. 9-10 (copy attached). At that point, the Court asked:

"You mean $1,000 a month?" The prosecutor answered and continued:

She was actually being paid $2,000 a month. She then signed bankruptcy schedules which failed to disclose that she had received the $110,000 and also failed to disclose the $90,000 in cash that was being held by her parents for her benefit. In addition, on her bankruptcy Schedule I of Current Income, she failed to disclose that she was receiving $1,000 in payments above and beyond the $1,000 in child support. The evidence of that would be the actual checks that were issued by her husband to her.

Ms. Evangelista signed those bankruptcy schedules and Statement of Financial Affairs under the penalties of perjury. Directly under her signature on each of those documents was a notice that making a false statement or concealing property is a crime punishable by imprisonment and a fine.

The next month, on October 22, 2001, Miss Evangelista testified under oath at a bankruptcy meeting of creditors. Again, she was represented by counsel at that meeting. She testified that - identified her signature on the schedules, on the Statement of Financial Affairs. She stated that she had reviewed them with her attorney and that they were accurate.

3

During the meeting she was asked about her divorce. She stated that she was living for three years rent-free in the former marital home and that, thereafter, it would revert to her husband. She stated further that he owed her no money other than the $1,000 per month child support which she had listed on the bankruptcy schedules. She didn't disclose the $110,000 payment that she had received for her interest in the home, nor the $90,000 being held by her parents, nor the additional $1,000 per month that she was being paid by her husband.

Following that meeting the bankruptcy trustee filed a report with the bankruptcy court that there were no assets for distribution to creditors and requesting that the case be closed. The bankruptcy court entered an order discharging Miss Evangelista's debts and closed the case.

Nearly a year later, in August of 2002, the bankruptcy trustee received a copy of Ms. Evangelista's divorce judgment and learned for the first time about the $110,000 payment. The trustee, as a result, filed a motion to reopen the bankruptcy case.

In early 2003, the FBI approached Ms. Evangelista to ask about the concealed funds. After that, Ms. Evangelista filed amended schedules in the bankruptcy case admitting that her parents were holding funds for her, and she did later turn over the proceeds of that – of the CD account, or she was intending to – strike that. I believe those funds were ultimately turned over to the bankruptcy trustee.

That's the evidence that the government would have presented for the case if it were to go to trial, your Honor.

Tr. 10-12. The Court then immediately asked Evangelista if she had anything to add to the government's statement of what it would prove, and she replied "no." Tr. 12. The Court asked whether she disagreed with anything the government said it would be able to prove, and she again replied "no." Tr. 12-13. Evangelista then entered her plea of guilty. Tr. 13.

4

## 2. **Presentence Report and Objections**

On January 7, 2004, the Probation Office issued its Presentence Report ("PSR"). The PSR calculated the loss or intended loss as $94,500. PSR ¶19. In addition, it recommended a two level enhancement under §2B1.1(b)(7)(B) because Evangelista's offense involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding. PSR ¶21.

On January 20, 2004, Evangelista submitted her written objections to the PSR. See PSR Addendum at pg. 19-24. Objection #2 contested the PSR's loss calculation. However, that objection raised a legal, not factual issue; i.e., that the loss should be calculated based on the actual amount of claims filed in her bankruptcy case, or $27,656, rather than the $94,5000 in assets she had concealed. PSR pg. 19. At no time has Evangelista contested the fact that she had received $110,000 from her ex-husband shortly before the bankruptcy and that her parents were holding over $90,000 for her at the time of the bankruptcy.

Evangelista's written objections did not contest the two-level enhancement for a misrepresentation or other fraudulent action in a bankruptcy proceeding. PSR pg. 19-24.

## 3. **Sentencing Hearing**

On February 24, 2004, the Court held a sentencing hearing. During a pre-hearing lobby conference, the Court advised counsel that it was inclined to accept the PSR's calculations, except for

5

the multiple-victim enhancement.  2/24/04 Tr. 3-5.  However, the
Court made clear that it would consider arguments by counsel before
reaching a final decision.  Tr. 5.

During the hearing, the Court heard argument on the
defendant's objections to the PSR.  The Court asked Evangelista's
attorney if the only substantive objection she was asserting
concerned the loss calculation.  Tr. 26-27.  Counsel replied that
"[i]t is."  Tr. 27.  Counsel then reiterated Evangelista's position
that the loss should be limited to the amount of actual claims
filed by bankruptcy creditors after the concealment was discovered.
Tr. 27.  However, he conceded that, as a matter of law, the
guidelines require that the loss be calculated as the greater of
actual or intended loss.  Tr. 27-28.  More importantly, he stated
that he did not dispute that the intended loss in this case was
$94,500.  Tr. 28.  The Court again confirmed that Evangelista had
no other objections.  Tr. 28-29.

The Court then stated its guideline calculations, adopting the
$94,500 loss figure as the agreed intended loss and imposing the
enhancement for a misrepresentation or other fraudulent action in
a bankruptcy proceeding.  Tr. 33-34.  The Court found the total
offense level to be 13, for a sentencing range of 12-18 months.
Tr. 35.  It then asked for any comments or objections to its
findings, and Evangelista's attorney stated he had "no comments."
Tr. 35.

6

After rejecting Evangelista's motion for a downward departure, the Court sentenced her to twelve months and one day in prison. Tr. 50.  Evangelista raised no other objections.  Tr. 50-52.  Nor did she appeal her conviction or sentence.

On July 22, 2004, Evangelista filed the present petition under 28 U.S.S. §2255.  She argues, in reliance on Blakely,  that because the facts used to calculate the loss and to find that her offense involved a misrepresentation or other fraud in a bankruptcy proceeding were "neither mentioned during her plea colloquy nor proved to a jury beyond a reasonable doubt . . . [and] [t]he Defendant did not stipulate to these facts," it violated her Sixth Amendment rights.  Mem. at 2.

## Argument

Evangelista's petition should be dismissed because: 1) she failed to assert the claim either at sentencing or on direct appeal and is thus procedurally defaulted and barred from raising the issue in a collateral proceeding;  2) Blakely does not apply to the U.S. Sentencing Guidelines; 3) Even if Blakely does apply to the U.S. Sentencing Guidelines, it does not apply retroactively to cases on collateral review; and 4) even if Blakely applies retroactively, there was no Sixth Amendment violation because Evangelista admitted to all facts necessary for the sentencing enhancements imposed by the Court.

7

## 1.   **Procedural default**

Evangelista may not now raise a Blakely issue because she procedurally defaulted the issue by not presenting it earlier. An issue may not be raised under Section 2255 if there was a full opportunity for the defendant to be heard during the sentencing phase and on direct appeal, but she failed to raise it before the trial court, or presented the claim but then abandoned it and did not include it in a direct appeal. Such an issue is deemed "defaulted" and may not be raised under Section 2255 except under unusual circumstances.

In sum, "a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim. If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations; if the claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice, see United States v. Frady, 456 U.S. 152 (1982))." Withrow v. Williams, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring).

In this case, Evangelista did not raise the Blakely issue before the district court or on appeal. Accordingly, she defaulted that issue.

Addressing the analogous issue in the Apprendi context, every

8

appellate court to consider the matter has applied the procedural default rule. See, e.g., Derman v. United States, 298 F.3d 34, 44-46 (1st Cir. 2002); United States v. Jenkins, 333 F.3d 151, 155 (3d Cir.), cert. denied, 124 S. Ct. 350 (2003); United States v. Sanders, 247 F.3d 139, 144-46 (4th Cir. 2001); United States v. Smith, 241 F.3d 546, 548-49 (7th Cir. 2001); United States v. Moss, 252 F.3d 993, 1001-03 (8th Cir. 2001); United States v. Bailey, 286 F.3d 1219, 1221 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); United States v. Pettigrew, 346 F.3d 1139, 1144 (D.C. Cir. 2003).

The law requires that a defendant bring all of her claims, even constitutional claims, before the trial court and on direct appeal, or she is barred from raising them on collateral review. "So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal." Sunal v. Large, 332 U.S. 174, 178 (1947).

In Sunal, the petitioners were convicted of refusing to submit for induction to the military. At trial, consistent with all lower court opinions at the time, the trial courts refused to entertain as a defense the petitioners' challenge to selective service regulations. Neither appealed. Subsequently, the Supreme Court held that the defense in fact should be allowed in such cases. In Sunal, the Court held that a writ of habeas corpus was not

9

available to the petitioners. The Court acknowledged some exceptions to the waiver rule, but held that those exceptions are very limited. Id. at 178-79.

> Of course, if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile.

Id. at 181.

> We are dealing here with a problem which has radiations far beyond the present cases. The courts which tried the defendants had jurisdiction over their persons and over the offense. They committed an error of law in excluding the defense which was tendered. That error did not go to the jurisdiction of the trial court. Congress, moreover, has provided a regular, orderly method for correction of all such errors by granting an appeal to the Circuit Courts of Appeals and by vesting us with certiorari jurisdiction. It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal. . . . If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implications. Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.

Id. at 181.

Under present law, a defendant who failed to raise an issue at trial or on direct appeal may pursue the claim under Section 2255

10

only if he demonstrates sufficient "cause" for the default and "prejudice" resulting from it.    Bousley v. United States, 523 U.S. 614, 622 (1998).    This doctrine applies directly to sentencing errors.    Indeed, a defendant who fails to raise an issue at sentencing must show cause and prejudice even to present it on direct appeal, lest the issue be deemed waived.    United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("The procedure for registering objection to errors in a sentencing proceeding is no longer obscure, and §2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal.").

Evangelista has failed to present any argument establishing either cause or prejudice for failing to raise this issue either at sentencing or on appeal.    Nor will she be able to do so.

Evangelista cannot, for example, show cause for failing to raise the argument earlier simply because the Blakely decision was unavailable and represented a change in circuit law.    See, e.g., Engle v. Isaac, 456 U.S. 107, 133 (1982) (holding that default was not excused by the likelihood that the claim would have been rejected; where it "cannot [be said] that respondents lacked the tools to construct their constitutional claim"); Murray v. Carrier, 477 U.S. 478, 486 (1986) (holding that competent counsel's inadvertence in not presenting a claim on appeal is not cause for default).    Here, the potential Blakely issue was certainly

11

available prior to the time that decision was announced, as evident from the fact that the defendant in Blakely pressed it. While the decision in Apprendi did not dictate the Blakely ruling, it certainly foreshadowed it and outlined the pertinent legal doctrines. Thus, the mere fact that counsel may have overlooked or underestimated the issue does not constitute cause for default. The tools were available to construct the argument which prevailed in Blakely. Because the Blakely issue was available to counsel prior to the announcement of that decision, the novelty of the claim does not provide cause for failure to raise it.

Nor can Evangelista prevail under the very limited exception to the default rule which provides for habeas consideration even where there is no cause for the default if the petitioner establishes that she is "actually innocent" of the offense for which she was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Almost all of the Supreme Court cases to address the actual innocence exception have focused on innocence of the underlying offense itself. For instance, Bousley defined actual innocence as proof offered by a petitioner that, "'in light of all the

12

evidence,' "it is more likely than not that no reasonable juror would have convicted him." 523 U.S. at 623, quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995). The Court has described such cases as "extraordinary" and presenting "a fundamental miscarriage of justice." <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991).

Only in <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992), did the Court apply the "actual innocence" concept to waive procedural default of a sentencing issue, and there the matter involved capital punishment. <u>Sawyer</u> held that a habeas petitioner sentenced to death, who defaulted on a challenge to the death sentence, may nevertheless raise the issue if he establishes that he is "innocent of death;" he must "show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty." <u>Id</u>. at 350.

The question remains whether the actual innocence exception may excuse procedural default outside the context of a challenge to a conviction or a sentence of death. May a Section 2255 petitioner raise even a defaulted sentencing issue on the grounds that he is "innocent" of application of the sentencing provision? May a petitioner attempting to rely on <u>Blakely</u>, who defaulted the issue by not presenting it at sentencing or on appeal, nevertheless take advantage of the decision on the theory that he is "innocent" of application of the sentencing enhancement?

13

All appellate courts to answer the question of application of
the actual innocence concept to guideline issues have concluded
that the innocence doctrine does not apply. These courts are
correct. The Supreme Court has repeatedly made clear that the
procedural default rule is fundamentally important, barring even
meritorious constitutional claims where a conviction is final and
the issues were not presented in a timely fashion before the
district court or Court of Appeals. It has allowed only the
narrowest exception to this doctrine, permitting habeas relief only
where there has been a complete miscarriage of justice and an
innocent person has been convicted of a crime.

To extend the actual innocence rule to sentencing claims would
swallow the procedural default rule regarding such issues. If a
petitioner who did not raise a guideline issue earlier could
present it anyway simply by showing that the issue is meritorious
and that the guidelines were incorrectly applied, that would
obliterate the requirement of a showing of cause for procedural
default. United States v. Mikalajunas, 186 F.3d 490, 494-95 (4th
Cir. 1999) (holding that defendants defaulted sentencing guideline
claim which resulted in additional incarceration of up to four
years). See also United States v. Richards, 5 F.3d 1369, 1371
(10th Cir. 1993) (holding that a "person cannot be actually
innocent of a noncapital sentence," and reversing the grant of a
Section 2255 petition which reduced the petitioner's sentence from

14

188 months to 60 months, because the issue had been defaulted).

Accordingly, a defendant may not excuse her failure to press the Blakely argument at sentencing or on direct appeal based on the narrow actual innocence exception.

Further, even if she could, the exception would not apply here. Evangelista does not contend that she was actually innocent of the pertinent sentencing factors, merely that the government did not pursue the appropriate procedural course for proving those facts.   Indeed, the record before the court at sentencing demonstrates that the sentencing determination was correct. Therefore, there is no relief from Evangelista's procedural default.

For all of these reasons, Evangelista cannot establish cause for her procedural default, and her Blakely claim should be dismissed on this ground as well, even if such a claim may be raised on collateral review.

## 2.  **Blakely does not apply retroactively**

Since Evangelista's petition is based on Blakely, it should be denied because Blakely does not apply retroactively to cases on collateral review.

In Blakely, the Court held that the application of a Washington sentencing procedure did not comport with the Sixth Amendment where a pertinent sentencing finding was made by a judge rather than a jury.   The Supreme Court held that this procedure

15

violated the principle set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that any fact which increases a statutory maximum sentence must be found by the jury under a reasonable doubt standard.   The Blakely Court stated that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."   Blakely, 124 S. Ct. at 2537 (emphasis in original).

Specifically, in Blakely, the defendant pleaded guilty to second-degree kidnaping involving domestic violence and use of a firearm, for which a state statute established a presumptive sentencing range of 49-53 months.   The court, at sentencing, imposed an "exceptional sentence" of 90 months based upon its finding that Blakely had acted with "deliberate cruelty" in committing the offense.   124 S. Ct. at 2535.   The Supreme Court held that this additional finding was invalid because not supported by a jury verdict or admission.   Evangelista seeks to rely on this holding to assert that the application of enhancements under the federal guidelines bears the same requirement, and that her sentence was unconstitutionally applied where pertinent facts were found by a judge rather than a jury.

Blakely stated that it passed no judgment on the federal guidelines.   See id. at 2538 n.9.   Indeed, it is the government's view that Blakely does not apply to the federal guidelines, which

16

have repeatedly been upheld by the Supreme Court, and which differ in material respects from the Washington state scheme at issue in Blakely. Further, any claim by Evangelista would be subject to plain error review, because she did not make any earlier objection on this basis. See Fed. R. Crim. P. 52(b); United States v. Cotton, 535 U.S. 625 (2002) (Apprendi error in indictment is subject to review for plain error in the absence of timely objection); Johnson v. United States, 520 U.S. 461, 466-67 (1997); United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001) (en banc).

However, the claim should not be reached at all, as Blakely, even if it applies to the federal guidelines, should not be applied retroactively. The Supreme Court has long held that its new constitutional decisions are not necessarily applicable to proceedings that had been completed when the new decisions were rendered. See Allen v. Hardy, 478 U.S. 255 (1986) (jury selection rule of Batson v. Kentucky, 476 U.S. 79 (1986), not applicable to cases on collateral review); Solem v. Stumes, 465 U.S. 638 (1984) (custodial interrogation rule of Edwards v. Arizona, 451 U.S. 477 (1984), not applicable to cases on collateral review); Michigan v. Payne, 412 U.S. 47 (1973) (prophylactic sentencing rule of North Carolina v. Pearce, 395 U.S. 711 (1969), not retroactive); Halliday v. United States, 394 U.S. 831 (1969) (guilty plea acceptance rule of McCarthy v. United States, 394 U.S. 459 (1969), not retroactive); Stovall v. Denno, 388 U.S. 293 (1967) (identification

17

procedure decisions of <u>United States v. Wade</u>, 388 U.S. 218 (1967), and <u>Gilbert v. California</u>, 388 U.S. 263 (1967), not retroactive); <u>Johnson v. New Jersey</u>, 384 U.S. 719 (1966) (interrogation rules of <u>Escobedo v. Illinois</u>, 378 U.S. 478 (1964), and <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), not retroactive); <u>Tehan v. Shott</u>, 382 U.S. 406 (1966) (Griffin v. California, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); <u>Linkletter v. Walker</u>, 381 U.S. 618 (1965) (exclusionary rule of <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961), not retroactive).

The governing rule was set forth in Justice O'Connor's plurality opinion in <u>Teague v. Lane</u>, 489 U.S. 288 (1989). Justice O'Connor endorsed Justice Harlan's principles "that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." <u>Id</u>. at 303. The latter principle is subject to only two narrow exceptions, which Justice O'Connor adopted from Justice Harlan with some modification. First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." <u>Id</u>. at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. <u>Id</u>. at 312-13. The Supreme Court has limited the class of new rules which

concern fundamental fairness to "watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." It has stated: "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. at 478, quoting Teague, 489 U.S. at 311. In Teague, Justice O'Connor stated: "Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313.[1]

Although the relevant portion of Justice O'Connor's opinion was a four-justice plurality opinion, her Teague standards have been applied by a majority of the Supreme Court, with some modification for sentencing rules, in a number of cases. See, e.g., O'Dell v. Netherland, 521 U.S. 151 (1997); Graham v. Collins, 506 U.S. 461 (1993); Sawyer v. Smith, 497 U.S. 227 (1990). As the Court explained in O'Dell v. Netherland, "[t]he Teague inquiry is conducted in three steps." 521 U.S. at 156. The first step is to determine whether the defendant's conviction became final prior to

---

[1]  The Supreme Court, despite many decisions addressing new rules of constitutional law, has yet to find any retroactive under the Teague rule.  See Levan v. United States, 128 F. Supp. 2d 270, 277-78 (E.D. Pa. 2001) (collecting cases).

19

the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception applies, the defendant is not entitled to the benefit of the decision and the inquiry ends.

In this case, it is undisputed that the petitioner's conviction became final before June 24, 2004, the date of the Blakely decision. Thus, the inquiry moves to the second step.

The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467; Sawyer v. Smith, 497 U.S. at 234; Teague v. Lane, 489 U.S. at 301 (emphasis in originals). A rule may be new even though it finds general support in prior cases. Sawyer v. Smith, 497 U.S. at 236. The test is whether, at the time Blakely was decided, a "reasonable jurist" would have felt "compelled" to adopt the rule it stated. O'Dell v. Netherland, 521 U.S. at 164; Graham v. Collins, 506 U.S. at 477. Under this standard, Blakely clearly adopted a new rule.

Four years before Blakely, in Apprendi, the Court held that

any fact which increases a statutory maximum sentence must be determined by a jury. Subsequently, every circuit court of appeals addressed whether this rule applied to determinations made, as in this case, in order to calculate a sentence under the guidelines within the statutory maximum. Without exception, every court held that the <u>Apprendi</u> rule was inapplicable to the Sentencing Guidelines, so long as the final sentence did not exceed the statutory maximum sentence on any count of conviction.[2]  That body of law makes unquestionable that, even if the 5-4 decision in <u>Blakely</u> is ultimately held to require jury determinations regarding every enhancement factor under the federal guidelines, that result is not "dictated" by the <u>Apprendi</u> precedent, and reasonable jurists were not compelled to so conclude.  <u>Simpson v. United States</u>, 376 F.3d 679, 681 (7th Cir. 2004) (stating that <u>Blakely</u> is a new rule: "The rule announced in <u>Blakely</u> is based in the Constitution and was not dictated or compelled by <u>Apprendi</u> or its progeny.  In fact, before <u>Blakely</u> was decided, every federal court of appeals had held

---

[2]  <u>See, e.g.</u>, <u>United States v. Casas</u>, 356 F.3d 104, 128 (1st Cir. 2004); <u>United States v. Luciano</u>, 311 F.3d 146, 153 (2d Cir. 2002); <u>United States v. Parmelee</u>, 319 F.3d 583, 592 (3d Cir. 2003); <u>United States v. Cannady</u>, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); <u>United States v. Floyd</u>, 343 F.3d 363, 372 (5th Cir. 2003); <u>United States v. Tarwater</u>, 308 F.3d 494, 517 (6th Cir. 2002); <u>United States v. Merritt</u>, 361 F.3d 1005, 1015 (7th Cir. 2004); <u>United States v. Banks</u>, 340 F.3d 683, 684-65 (8th Cir. 2003); <u>United States v. Ochao</u>, 311 F.3d 1133, 1134-36 (9th Cir. 2002); <u>United States v. Mendez-Zamora</u>, 296 F.3d 1013, 1020 (10th Cir. 2002); <u>United States v. Ortiz</u>, 318 F.3d 1030, 1039 (11th Cir. 2003); <u>United States v. Pettigrew</u>, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

that <u>Apprendi</u> did not apply to guideline calculations made within the statutory maximum.").

Because <u>Blakely</u> therefore constitutes a new rule of procedure, the question remains whether it is subject to either of the exceptions outlined in <u>Teague</u> -- for new substantive rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness.

The fact that <u>Blakely</u> is not subject to either of these exceptions was essentially decided by the Supreme Court on the same day that it decided <u>Blakely</u>. See <u>In re Dean</u>, 375 F.3d 1287, 1290 (11th Cir. 2004) ("the Supreme Court has strongly implied that <u>Blakely</u> is not to be applied retroactively"). In <u>Schriro v. Summerlin</u>, 124 S. Ct. 2519 (2004), the Court held that the decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), does not apply retroactively to cases already final on direct review. In <u>Ring</u>, the Court applied the <u>Apprendi</u> principle to a death sentence imposed under the same Arizona sentencing scheme at issue in <u>Summerlin</u>. The <u>Ring</u> Court concluded that, because Arizona law authorized the death penalty only if an aggravating factor was present, <u>Apprendi</u> required the existence of such a factor to be proved to a jury rather than to a judge.

In <u>Summerlin</u>, the Court determined that <u>Ring</u> presented a new rule of procedure which was not retroactively applicable under the <u>Teague</u> formulation. First, it confirmed that <u>Ring</u> (and by

22

extension, Apprendi) is in fact a procedural rule subject to Teague. The Court explained that substantive rules "narrow the scope of a criminal statute by interpreting its terms [or] place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." 124 S. Ct. at 2522. In contrast, rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. at 2523. In a statement directly applicable to Blakely, the Court concluded, "rules that regulate only the manner of determining the defendant's culpability are procedural." Id. (emphasis in original). "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules . . . ." Id.

The Summerlin Court also rejected the contention that the jury requirement for sentencing factors established in Apprendi and Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules

23

is extremely narrow, and 'it is unlikely that any ... 'ha[s] yet to emerge.' <u>Tyler v. Cain</u>, 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting <u>Sawyer v. Smith</u>, 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990))." <u>Summerlin</u>, 124 S. Ct. at 2523. The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." <u>Id</u>. at 2525 (emphasis in original).

This result is directly applicable to the <u>Blakely</u> holding that guideline determinations under the Washington state sentencing scheme should be made by a jury rather than a judge. If, as in <u>Summerlin</u>, the requirement that a jury determine an aggravating factor which leads to imposition of the death penalty is not so fundamental to require retroactive application, surely the same holding applies to the guideline enhancement issues to which <u>Blakely</u> is addressed.[3]

---

[3]     Indeed, prior to <u>Summerlin</u>, every appellate court to address the issue, applying similar reasoning, held that the decision in <u>Apprendi</u> is not retroactively applicable in cases on collateral review.  <u>See, e.g.</u>, <u>Sepulveda v. United States</u>, 330 F.3d 55, 63 (1st Cir. 2003); <u>Coleman v. United States</u>, 329 F.3d 77, 90 (2d Cir.), <u>cert. denied</u>, 124 S. Ct. 840 (2003); <u>United States v. Jenkins</u>, 333 F.3d 151 (3d Cir.), <u>cert. denied</u>, 124 S. Ct. 350 (2003); <u>United States v. Sanders</u>, 247 F.3d 139 (4th Cir. 2001); <u>United States v. Brown</u>, 305 F.3d 304, 307-10 (5th Cir. 2002); <u>Goode v. United States</u>, 305 F.3d 378, 382-85 (6th Cir. 2002); <u>Curtis v. United States</u>, 294 F.3d 841, 842-44 (7th Cir. 2002); <u>United States v. Moss</u>, 252 F.3d 993, 997-1001 (8th Cir. 2001); <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664, 667-71

For these reasons, a claim of error under <u>Blakely</u> may not be raised in a case, like this one, which became final prior to the <u>Blakely</u> decision.   <u>Accord</u> <u>Cuevas v. DeRosa</u>, 2004 WL 2367356 (1st Cir. Oct. 22, 2004) (denying leave to file second or successive §2255 petition based on <u>Blakely</u>, because "the Supreme Court has not decided whether <u>Blakely</u> is even applicable to the federal sentencing guidelines . . . much less declared its ruling <u>Blakely</u> to be retroactive to cases on collateral review); <u>United States v. Beatty</u>, 2004 WL 1759028 (4th Cir. Aug. 5, 2004) (unpublished) (denying certificate of appealability to raise <u>Blakely</u> claim because <u>Blakely</u> does not apply on collateral review).

Evangelista's petition should be dismissed.

### 3. **Evangelista stipulated to facts supporting enhancements**

Even assuming, <u>arguendo</u>, that Evangelista was not procedurally barred from raising this claim, and that <u>Blakely</u> applies retroactively to the U.S. Sentencing Guidelines, her petition must fail because she stipulated to sufficient facts at sentencing for the Court to have imposed the now-contested guideline enhancements.

At sentencing, Evangelista agreed with the government's version of the facts which involved her concealing over $90,000 in cash from her bankruptcy creditors as part of a bankruptcy fraud offense.   11/20/03 Tr. 9-13.   At sentencing, she agreed that the

---

(9th Cir. 2002); <u>United States v. Mora</u>, 293 F.3d 1213, 1218-19 (10th Cir. 2002); <u>McCoy v. United States</u>, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

amount of intended loss caused by her offense was $94,500. 2/24/04 Tr. 27-29. Thus, she admitted all facts necessary for the Court to have imposed an enhancement for a loss of $90,000.

Evangelista also admitted to all facts necessary for the Court to have imposed an enhancement based on Evangelista's offense having involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding." U.S.S.G. §2B1.1(b)(7)(B). During the plea colloquy, Evangelista admitted that she had reviewed and signed - under penalty of perjury - bankruptcy schedules which she knew failed to disclose over $90,000 in cash and $1,000 in monthly payments she was then receiving from her ex-husband. Without more, that was an admission to making misrepresentations during the course of a bankruptcy proceeding. In addition, she pleaded guilty to bankruptcy fraud, which necessarily established that she committed a fraud during the course of a bankruptcy proceeding.

The plain language of §2B1.1(b)(7)(B) clearly mandates its application in any bankruptcy fraud case. That interpretation is confirmed in the Sentencing Commission's statement of reasons for adding that provision: "This amendment creates a separate and distinct basis for a two-level enhancement under the fraud guideline for a misrepresentation or false statement made in the course of a bankruptcy proceeding. . . . Therefore, any case involving a bankruptcy fraud will result in a two-level enhancement

. . .." U.S.S.G. App. C. ¶597 (emphasis added):

Since the enhancements imposed by the Court were based solely on the facts admitted by Evangelista, there could have been no potential <u>Blakely</u> or other Sixth Amendment violation.

## Conclusion

For all the above reasons, the government respectfully requests that the Court dismiss Evangelista's §2255 petition as being wholly without legal or factual merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

MARK J. BALTHAZARD
Assistant U.S. Attorney

## Certificate of Service

I here certify that I caused a copy of the above document to be served by mail on Petitioner's counsel of record, Peter L. Ettenberg, Gould & Ettenberg, P.C., 370 Main Street, Worcester, MA 01608 on October 28, 2004.

MARK J. BALTHAZARD
Assistant U.S. Attorney

27