1   truthful and forthcoming with that information, that's true.

2   Q.   I'll take not being truthful as akin to lying.

3        MR. BALTHAZARD:   Thank you.  I have no further

4   questions.

5        MR. ETTENBERG:   I have no questions.

6        THE COURT:   Thank you, Doctor Daignault.  You may

7   step down.

8        I take it that's all of the evidence that the

9   government wishes to submit in this regard?

10       MR. BALTHAZARD:   Yes, your Honor.

11       THE COURT:   And the defendant wishes to present no

12  rebuttal evidence?

13       MR. ETTENBERG:   That's correct, Judge.

14       THE COURT:   So we are at this point ready to proceed

15  with the matters that we need to address in connection with

16  the sentencing.

17       Before I begin, I will say what I have received, and

18  you can tell me whether there are any documents that I have

19  not received if I don't mention them.

20       I have received and read the Presentence Report,

21  certain letters that were submitted on behalf of the

22  defendant, including two that were handed to my deputy this

23  afternoon, one from the West Boylston Public Schools and

24  another -- seems to be some sort of a thank-you note from a

25  Ms. Marengo (phon).

1          I have also received a motion for a downward

2     departure and sentencing memorandum from the defendant; as

3     I've said before, the government's motion for an evidentiary

4     hearing and the government's sentencing memorandum.  And I

5     have a report from the Pretrial Services officer with respect

6     to the release status report.

7          I believe that is all the documentation that I have

8     received.  Is there anything that I have not mentioned that I

9     should have received?

10         MR. ETTENBERG:  Not from me, Judge.

11         MR. BALTHAZARD:  No, your Honor.

12         THE COURT:  All right.  Then turning to the matters

13    that we need to resolve, before we get to the sentencing,

14    there were certain objections filed in connection with the

15    Presentence Report.  I understand, do I not, Mr. Ettenberg,

16    that Objection No. 5, with respect to the minimal participant

17    adjustment, has been waived by the defendant.

18         MR. ETTENBERG:  Yes.

19         THE COURT:  And that, as far as I can tell, leaves

20    only one substantive objection that has not been resolved, and

21    that is, Objection No. 2, which pertains to Paragraph 19, the

22    loss calculation in the Presentence Report.

23         And I understand it is the defendant's position that

24    the defendant ought not to be held responsible for a $110,000

25    loss or even a $95,000 loss but for some reason that that loss

1    should be $15,000.  I'm not exactly sure why, but at least I

2    understand that there is an objection to the calculation of

3    the loss.  Is that right, Mr. Ettenberg?

4          MR. ETTENBERG:  Yes, Judge.

5          THE COURT:  That is the only substantive objection we

6    have before us?

7          MR. ETTENBERG:  It is.  I'm not going to belabor it.

8    I clearly understand the case law.  I understand the

9    government's position and I understand Probation's position.

10    And I simply put it in the context of -- this in some measures

11    dovetails to what we spoke about in chambers which is

12    essentially --

13          THE COURT:  You mean in the lobby.

14          MR. ETTENBERG:  In the lobby.  -- that as soon as the

15    FBI came to Miss Evangelista, she made immediate arrangements

16    to have the money recovered, turned immediately over to the

17    bankruptcy trustee, and that the amount of the actual claims

18    that have been filed, at least from my information, is

19    approximately $27,000.

20          And I also understand, in talking to Miss

21    Evangelista, that any creditor who has made a claim has been

22    reimbursed already.  Restitution has been made.  I'm

23    certainly --

24          THE COURT:  You don't quarrel with the probation

25    officer's statement to me that, as a matter of law, pursuant

1    to Guideline 2B1.1, Application Note 2(a), the loss to be

2    calculated or to be attributed is the greater of actual or

3    intended loss?

4            MR. ETTENBERG:  I don't disagree with that, Judge.

5            THE COURT:  You don't dispute that the intended loss

6    here was $94,500?

7            MR. ETTENBERG:  I don't.

8            THE COURT:  Any response to that?

9            MR. BALTHAZARD:  I don't think I need to respond to

10   that, your Honor.  I think that answers it.

11           THE COURT:  I think that does answer that question.

12           The only other matter that was stated as an

13   objection, Mr. Ettenberg, was Objection No. 7, which, in fact,

14   talks about a downward departure motion for aberrant behavior.

15   That, in fact, is a downward departure motion and not an

16   objection?

17           MR. ETTENBERG:  Yes.

18           THE COURT:  So we've dealt with all of the

19   objections.

20           Then I will make findings that are required in

21   connection with the Presentence Report.

22           MR. ETTENBERG:  Judge, I'm sorry to interrupt.  There

23   was the Objection No. 4, which is the guideline manual

24   objection.

25           THE COURT:  Yes.  But I thought that had been agreed

1   to by counsel.

2       MR. ETTENBERG:  It is.  I just wanted that on the

3   record.

4       THE COURT:  I should have mentioned that.  The

5   Objection No. 4 was as to which of the various guidelines

6   should apply.  And it is now agreed by counsel that the

7   guideline that was published and effective November 1, 2001,

8   rather than the guideline that was published last fall, 2003,

9   is the appropriate guideline.

10      MR. ETTENBERG:  Yes, Judge.

11      MR. BALTHAZARD:  Your Honor, I'm not sure if this is

12  the correct time to raise it.  The government did not file an

13  objection with respect to acceptance of responsibility, but it

14  has been raised in the government's sentencing memorandum

15  because it was based on information that had been supplied

16  after the issuance of the original PSR and the period for

17  filing objections.

18      THE COURT:  Yes.

19      MR. BALTHAZARD:  I just want to make sure the

20  government's --

21      THE COURT:  You may state your objection, then, if

22  you have one, to the recommendation that the probation officer

23  has given to this Court, and that is, that the defendant

24  should be awarded, if you will, a three-level reduction for

25  acceptance of responsibility.

1           MR. BALTHAZARD:  Yes, your Honor.  The government

2    makes that objection.  Essentially, my argument is as is set

3    forth in the sentencing memorandum but that I believe that

4    based on the information supplied through Doctor Daignault,

5    and in Ms. Evangelista's statement of the version of the

6    events, she very much seeks to put the fault, the blame, for

7    most of her conduct on other people.  And I would submit that

8    having done that, she has not fully accepted responsibility

9    for her actions.

10          THE COURT:  Then why wouldn't the government be

11   moving that I should allow the defendant to withdraw her plea

12   of guilty?  Because she came before this Court and pled

13   guilty, at which time a colloquy was had as to what the

14   government would or would not prove.  And, as I recall, the

15   defendant, Mrs. Evangelista, fully admitted to the crime that

16   she was charged with.

17          I understand it's the position of the government that

18   she is now somehow retracting or partially retracting that

19   admission.  But if you really want to pursue the ultimate aim

20   of your point, that is, that she doesn't now take

21   responsibility for her actions, isn't the appropriate remedy a

22   withdrawal of the plea and have her stand trial?

23          MR. BALTHAZARD:  I think not, your Honor.  I think

24   those are two entirely different issues.  She pleaded to a

25   version of conduct as stated by the government and agreed that

1   she was guilty of the events at the time.

2           Now, in connection with her sentencing, she's made a

3   variety of what I can only characterize as self-serving

4   statements in which she has done everything possible to

5   minimize her role in that conduct, in that offense.  She's not

6   sought to withdraw her plea, and I can understand why she

7   wouldn't want to do that, because it's quite clear that she

8   committed the offense.

9           But the issue of whether -- for purposes of getting

10  that acceptance of responsibility reduction, whether she is

11  really fully accepting responsibility -- truly accepting

12  responsibility for her actions -- I think those are separate

13  issues, and I think what she's done since having pled guilty

14  is gone back on that.

15          THE COURT:  All right.  I'll ask Mr. Ettenberg, is

16  your client retracting her admission, full admission, of guilt

17  in every material sense to bankruptcy fraud?

18          MR. ETTENBERG:  She is not, Judge, not at all.

19          THE COURT:  How do you respond to Mr. Balthazard's

20  statement that throughout at least your pleadings it at least

21  sounds like the defendant is pointing the figure at everybody

22  else except herself as the responsible party for this

23  bankruptcy fraud crime?

24          MR. ETTENBERG:  I think my response is this:  In the

25  context of hearing from Doctor Daignault and my discussions

1    with him and his report -- and I think that it goes to the way

2    -- let me start this.  Miss Evangelista absolutely blames

3    nobody else but herself.  She accepts full responsibility.

4    She has told me that over and over.

5         She has described a series of events where she felt

6    -- and I think that's fully described in all of the documents

7    you received -- how she felt and how she perceived things.

8    And coupling that with Doctor Daignault's testimony and his

9    report of her severe depression and the elements of the

10   Battered Women's Syndrome, how she felt and how she perceived

11   things, that she was a part and parcel of this.

12        However, she's the one that made the decisions to do

13   it.  She's the one that did it.  She's the one that ultimately

14   signed the paperwork.  I'm using Mr. Balthazard's words

15   because I know he's going to use them later.  She signed the

16   papers.  She swore to the trustee.  She did all of those

17   things.  That was part of the conduct that she has accepted,

18   that she admits that she did in this case.

19        She's not backtracking at all.  She's accepted

20   responsibility.  The minute she was confronted by the FBI, she

21   couldn't get rid of that money fast enough.  She turned that

22   over.  She accepted it.  I think, in my conversation with her,

23   she felt relieved that it was finally done, that this has been

24   eating at her.  She knew it was wrong.  She knew it was wrong

25   then.  She knows it's wrong now.  I think it's the words that

1   she uses in the pleadings are her rationalization to allow her

2   to get through all of this.  So I don't think it's a

3   retraction in any way by her.

4           THE COURT:  All right.  Then I will turn to the

5   recommendations made to me in the Presentence Report starting

6   at Page 6, wherein it is recommended that the appropriate

7   guideline is the guideline manual issued November 1, 2001.

8   The Court adopts that recommendation.

9           The recommendation also points me to Guideline 2B1.1

10  as the most applicable guideline.  The Court does adopt that

11  recommendation, that is, the so-called "theft, embezzlement

12  and receipt of stolen property" guideline, which does, in

13  fact, in its subsections, relate to bankruptcy fraud.

14          The base offense level of that particular guideline

15  is 6; and because under Subsection (b)(1)(E) of that

16  guideline, where the loss is between -- more than $70,000 but

17  less than $120,000, an eight-level increase is warranted.  As

18  previously found by the Court in denying the defendant's

19  objection to the Probation Department's recommendation on

20  loss, the loss is calculated and determined to have been

21  $94,500 because that was the intended loss, not the actual

22  loss but the intended loss.  Therefore, an eight-level

23  increase is applied to the base offense level.

24          Furthermore, because the offense involved a

25  misrepresentation or other fraudulent action during the course

1    of a bankruptcy proceeding, Subsection (b)(7)(B) of the

2    subject guideline is applied, and a two-level increase to the

3    offense level is awarded for that fact.

4        The Probation Department did make a recommendation

5    which the Court is not going to follow, and that is with

6    respect to Guideline 2B1.1(b)(2)(A)(ii), which calls for a

7    two-level enhancement if the offense involved ten but less

8    than fifty victims.

9        The Court has determined that pursuant to Application

10   Note 3(A)(ii), wherein the definition of victims is said to

11   mean, "Any person who sustained any part of the actual loss

12   determined under Subsection (B)(i)," and it goes on but to

13   matters that are unimportant as far as this particular finding

14   is concerned.

15       The Court believes that because in this case, which

16   is unusual, the original intended victims, that is, the

17   creditors of Mrs. Evangelista, are or have already been made

18   whole with respect to their claims; and, therefore, they do

19   not come within the meaning of persons who sustained any part

20   of the actual loss.

21       Therefore, the Court has determined that a two-level

22   increase is not warranted under that particular section.  And,

23   therefore, the Court finds that the adjusted offense level is

24   16.  And, further, notwithstanding the objection of the

25   government, the Court awards a three-level downward adjustment

1    for acceptance of responsibility because, although it does

2    seem to the Court that the defendant has made certain

3    statements which call into question whether or not she fully

4    accepts responsibility for her crime, she, in fact, did accept

5    full responsibility at the time of the change of plea.  The

6    Court took that change of plea and understands that there has

7    been no attempt or effort or desire to withdraw that plea.

8    Therefore, the Court does find that she is entitled to a

9    three-level reduction for acceptance of responsibility and,

10   therefore, ends up with a total offense level of 13.

11          There are no prior -- there is no prior record of

12   this defendant.  Therefore, she has no criminal history points

13   and falls in Criminal History Category I.

14          Now, that leaves -- well, I'll ask, do counsel have

15   any comments or objections to make at this stage?

16          MR. BALTHAZARD:  Your Honor, the only one is that the

17   government would object as to the victim enhancement, the

18   Court's decision to not include that two-level.

19          THE COURT:  Mr. Ettenberg.

20          MR. ETTENBERG:  I have no comments, Judge.

21          THE COURT:  Then the only thing we have remaining

22   before we get to the sentencing is the motion of the defendant

23   for a downward departure.  And there are two grounds for which

24   the defendant has moved for a downward departure.  The first

25   is that she alleges that she was significant -- or had a

1    significantly reduced mental capacity and that under Guideline

2    5K2.13, she is entitled to a downward departure.  We have, of

3    course, heard testimony from Mr. Daignault -- rather, Doctor

4    Daignault, in that regard.  And, also, the defendant has moved

5    for a downward departure for aberrant behavior under Section

6    5K2.20.

7         I, of course, have considered very carefully the

8    arguments that have been made in the pleadings with regard to

9    both of those grounds for downward departure, but I will hear

10   counsel briefly if you wish to supplement those arguments.

11   First, Mr. Ettenberg.

12        MR. ETTENBERG:  Thank you, Judge.  I appreciate the

13   opportunity to do so.  I don't suggest -- and I don't think

14   Doctor Daignault suggests -- that this rises to the level of a

15   full-blown diminished capacity.  And I'm not hopeful that the

16   Court would come to that point, although I would certainly

17   urge it.

18        But I think that it cannot be ignored.  And what the

19   significant mental impairment due to the severe depression

20   does, is it puts the case in a different context and puts it

21   into aberrant behavior.  My argument is essentially a

22   continuum.  It's a continuum of the severe depression that

23   distorts her view, that puts her in a hopeless situation, with

24   no hope at all for whatever is going to happen in her life,

25   feeling totally defeated.  And then in an otherwise lawful

1    life, completely lawful life, she does one thing, and that's
2    commits a bankruptcy fraud.
3          Mr. Balthazard may argue that it's an ongoing event,
4    that it's -- she filed the bankruptcy petition concealing the
5    assets.  She signed the forms.  That's another part of it.
6    She was not truthful to the trustee.  That's another part of
7    it; that all of this was, you know, separate acts.  It was one
8    -- it was more than one continuing, long-term act.
9          I suggest that it really was one act, and she had to
10   just get through it to the end.  And I think that it was
11   clearly aberrant behavior.  The letters --
12         THE COURT:  What was the one act, Mr. Ettenberg?  Was
13   it the decision to file bankruptcy in the first place?  Was it
14   the filing of her schedules in the second place?  Was it the
15   appearance at the hearing in October in the third place?  Or
16   was it accepting the discharge in December in the fourth
17   place?
18         MR. ETTENBERG:  I think that it was all of that, but
19   I don't think she saw it as four separate events.  I think she
20   saw it as, I've got to do this to get the bankruptcy done.  I
21   think that's how she saw it, that this was just part of it.
22   It's just like going through the divorce.  You've got to have
23   the pretrial conference.  You've got to go through that.
24   You've got to have the four-way conferences.  You've got to go
25   through those.  You've got to go through depositions.  You've

1   got to go through discovery.  It's all part and parcel of one

2   event:  the divorce.  So this was all part and parcel of the

3   bankruptcy.

4          There's been comments made about what was said and

5   how it all came about.  I think that if the Court looks at --

6   I don't want to tread into difficult territory.  But I think

7   if you just simply look at the divorce settlement, Mrs.

8   Evangelista was faced with a situation of, here's $110,000,

9   from which your lawyer is going to get X amount of dollars and

10  you're going to get the rest.

11         Now, you can take that money, and you can then put it

12  into the bankruptcy and walk away with literally nothing,

13  because the money would go into the bankruptcy, pay off the

14  creditors and it's over.  You can do that.  And then you get

15  nothing from your divorce.  Or you can not put that money into

16  the bankruptcy, and that's your divorce settlement.

17         I think the way she was, her state of mind, her

18  defeat, after all that time and wherever she was, that was the

19  choice -- the Hobson's choice she felt and that's where she

20  went.

21         The history of this woman is clearly of a naive woman

22  who is not highly educated, whose life was essentially

23  controlled by her husband.  Her daily life was controlled by

24  her husband.  After the divorce her life was still controlled

25  by the husband.  He controlled all the pursestrings all

1  throughout their marriage.

2          I think if -- and I've said this to a number of

3  people.  If you sat down with Carol Evangelista for five

4  minutes, you'd see what a sweet, caring, compassionate,

5  understanding, nice person she is.  And for her to find

6  herself in this situation today is beyond her imagination.

7  She cannot comprehend the idea and the concept of the words

8  that her husband said to her coming true:  "I'm going to bury

9  you."  And that's what he's done.  And the final nail in this

10 coffin is the possibility that she's going to be incarcerated.

11         I urge the Court with every fiber that I have to not

12 incarcerate Miss Evangelista but to impose a period of home

13 detention.  The humiliation, the embarrassment, this whole

14 nightmare has had a dramatic, devastating effect on her.  And

15 it cannot be put into words.  It can't be explained.  We can't

16 walk in her shoes.

17         I represent to this Court that I have spent hours

18 upon hours with her.  I've gotten to know her.  I know Miss

19 Bowman has.  I think Doctor Daignault has, the time that he

20 spent with her.  I think it comes through in the reports and

21 the information that's been provided to you.  This is a woman

22 who went along.  Her hope was gone.  She was beaten down.  Her

23 will was lost.  And her ability to stand up and speak for

24 herself was gone.

25         And I just would close by this:  I've had some

1    conversations with Catherine Davis, who is the therapist who's

2    been talking to her and treating her.  And what she's saying

3    to me is that one of the things that she's learned about Mrs.

4    Evangelista is that she was involved in something that she

5    couldn't get out of.  She was so afraid to say no.  She wasn't

6    able to speak up for herself.  And none of this was all really

7    planned or premeditated by her.

8         What she also said to me is that what she's working

9    on in her therapy with her is her ability to be more

10   assertive, to assert herself in a way that makes her feel

11   comfortable and in a way that makes her be a whole person.

12        So I ask the Court to leave her with her family, to

13   give her the opportunity to continue in this therapy, and to

14   be on home detention for a period of time and not be

15   incarcerated.  She has so clearly accepted her responsibility.

16   She has clearly understood what she's done is wrong and has to

17   be punished, but she punishes herself every day.  And I think

18   that she clearly meets all of the requirements of an aberrant

19   behavior departure, all the elements that are put forth in the

20   statute.  She has lived an otherwise completely lawful life

21   and now finds herself in this terrible, terrible nightmare.

22   Thank you, Judge.

23        THE COURT:  All right.  Mr. Balthazard.

24        MR. BALTHAZARD:  Yes, your Honor.  Your Honor,

25   respectfully, I don't believe that the requirements of an

1   aberrant behavior departure have been met.  I won't argue

2   about the otherwise law-abiding-life factor.  But with respect

3   to it being of limited duration, I would submit that an

4   offense that takes place over the course of several months,

5   involves several different actions, false statements being

6   made and documents being made under oath in a proceeding in

7   bankruptcy, I would suggest that that was not -- that that

8   would not be under any definition of limited duration.

9        The issue of her mental and emotional condition, my

10  understanding of the guidelines, only comes into play if, in

11  fact, she has met the requirements and fit to her criminal

12  activity under the definition of aberrant behavior to begin

13  with.

14       But with respect to both the mental and emotional

15  conditions that's been represented and the diminished capacity

16  argument, I feel like we're in Probate Court, that we're

17  relitigating a divorce, your Honor, which is something that

18  we're really not here to be doing.  We don't know what

19  happened during that divorce proceeding.  We will never know

20  the truth.  We've heard Ms. Evangelista's version of what went

21  on in the marriage and the divorce.  We've heard it over and

22  over again and understand now that Doctor Daignault relied

23  essentially on nothing more than Ms. Evangelista's version.

24       She says she got cheated in the bankruptcy.  We don't

25  know.  She had counsel.  She had someone looking after her

1   interests.  She had somebody looking for what she said were

2   hidden assets that her husband had.  Again, we don't know.

3   Nothing was found.  We'll never know whether anything was

4   there.  We do know she felt cheated and she got out of the

5   marriage.  She went through this divorce and she decided she

6   was going to keep it for herself.  She had been cheated in the

7   divorce, and she was going to cheat her creditors on the other

8   end.

9           I think the Court should disregard completely

10  anything that was contained in Doctor Daignault's report.  I

11  think the email from Fran Bowman shows that the conclusions

12  were bought and paid for, that he was told up front what they

13  wanted; to quote, "She needs a departure."  She was -- Doctor

14  Daignault was told that this is a case of aberrant behavior

15  and asked him to -- gave him the standards for aberrant

16  behavior and asked him for his report.  There's nothing in the

17  email that's been submitted to the Court asking for any

18  independent evaluation.

19          Doctor Daignault clearly was sought out because he's

20  somebody that Fran Bowman had previously dealt with before.

21  She knew what she was going to get from him, and she was going

22  to get a report that gave the -- gave a conclusion that this

23  was aberrant behavior.  Lo and behold, that's exactly what he

24  provided.

25          I think it's very significant that Doctor Daignault

1   didn't even think it was worth bothering to hear the 341

2   meeting tape, the tape of Ms. Evangelista in the course of

3   committing this offense.  What better evidence might he have

4   had as to her state of mind, the way she would have reacted,

5   the way she did react, what she actually said during that

6   proceeding?  Was she crying?  Was she soft?  Was she loud?  He

7   has no idea.

8        This is a situation, rare situation, where a

9   psychologist would actually be able to see -- at least hear --

10  what happened.  And he felt -- didn't seem to be -- he didn't

11  seem -- he didn't even ask her, perhaps I could listen to the

12  tape.  Didn't think it was significant enough.  I would submit

13  to the Court that it would have been highly significant, but

14  it didn't really matter to him because he knew what conclusion

15  he was going to draw and so did Fran Bowman and Ms.

16  Evangelista when they hired him to do that.  I would suggest

17  that the Court disregard his report and his conclusions

18  entirely.

19       For all these reasons the government opposes and all

20  the reasons set forth in the government's memorandum -- I

21  don't need to -- should not repeat all of them, your Honor.

22  The government opposes the downward departure on either

23  ground.  The government would recommend that the Court impose

24  a sentence at the low end of the sentencing guideline ranges.

25  There's no obligation on the government to make that

1    recommendation.  There's no plea agreement in this case.  But

2    the facts of this case are not extraordinary.  The Court --

3    this Court has obviously handled many bankruptcy fraud cases.

4    I'm familiar with many of them.  I don't think there's

5    anything extraordinary or some reason why a sentence should be

6    imposed above the low-end range in this case.

7         There's no restitution to be paid because the money

8    has all come back.  The government would recommend a $100

9    mandatory special assessment, two years of supervised release.

10   The government would recommend a fine in this case.  I think

11   it's clear that Miss Evangelista has the funds to pay a fine.

12   I don't think that the Court should impose anything

13   particularly significant, particularly if the Court is going

14   to send her to prison.  That is a very significant punishment

15   in this case.  I would recommend the low end, but I think

16   that, despite the information in the Presentence Report, the

17   fact that there's sufficient funds to pay for Ms. Bowman and

18   for this report, indicate that there is at least enough to pay

19   the minimum fine that's required under the guidelines.  That's

20   the government's recommendation, your Honor.

21        THE COURT:  All right.  Thank you, Mr. Balthazard.

22        The Court has, as I said before, carefully considered

23   this matter in great detail.  I do not believe there is

24   sufficient grounds for a downward departure either under the

25   claimed significant reduced mental capacity or under the

1    aberrant behavior provisions of the guidelines.

2              I do not believe that Mrs. Evangelista did not know
3    right from wrong.  I am confident that she did, in fact, know
4    right from wrong.  I do not believe that she was unable to
5    control her actions.  I believe to the contrary; she was able
6    to control her actions by virtue of all of the evidence that I
7    have before me.

8              I do not either fully attribute or discount Doctor
9    Daignault's opinions because Doctor Daignault, who is, I am
10   sure, a very competent doctor -- psychologist and/or doctor --
11   did himself not say unequivocally that he believed that his
12   client did not know right from wrong or was unable to control
13   her actions.

14             And I agree with him, that we are on different
15   planes.  Psychology and the law do not neatly overlap.  But I
16   am in a position of having to decide whether or not she
17   qualifies under strict written statutory law with certain
18   requirements for downward departure, and I believe that she
19   does not qualify as being -- having a significantly reduced
20   mental capacity; and, therefore, her motion for downward
21   departure under 5K2.13 is denied.

22             Further, with respect to the claim for aberrant
23   behavior, I have a statute that I must comply with, and it
24   says that aberrant behavior means a single criminal occurrence
25   or single criminal transaction that:  (a) was committed

1    without significant planning; (b), was of limited duration;

2    and (c), represented a marked deviation by the defendant from

3    an otherwise law-abiding life.     .

4         I am sure that she qualifies for the third subsection

5    of that reasoning for a downward departure; that is, this does

6    represent a marked deviation from her otherwise law-abiding

7    life.  But it was not of limited duration and it was not

8    without significant planning.  The matter persisted between

9    August and December, and there were multiple opportunities for

10   Mrs. Evangelista to decide that she would abide by the law,

11   not the least of which was signing documents specifically

12   above an absolutely clear statement that she was required to

13   sign those documents truthfully or risk going to prison if she

14   did not.

15        This was not an aberrant behavior.  This was

16   something that took planning, and it was not of a limited

17   duration.  The motion for downward departure for aberrant

18   behavior is denied.

19        We are then at the point for recommendations for

20   sentencing.  I've already heard the government's

21   recommendation.  Mr. Ettenberg, does the defendant have a

22   recommendation?

23        MR. ETTENBERG:  Yes, Judge.  If the Court is not

24   going to be departing downward, then I would ask the Court to

25   sentence at the lowest level of the guidelines.  I would also

1   tell you, Judge, that Miss Evangelista, if the Court would

2   permit, does have a statement she would like to make.

3           THE COURT:  She will get that opportunity.  Do you

4   wish any further opportunity to expand on your recommendation,

5   Mr. Balthazard?

6           MR. BALTHAZARD:  No, your Honor.

7           THE COURT:  Does the defendant wish to address the

8   Court before sentence is imposed?

9           MR. ETTENBERG:  Before I read her statement, Judge, I

10  do want to make one comment about my sentencing

11  recommendation.  I would ask you not to impose a fine.  Her

12  finances are limited severely.  The amount of monies that she

13  has expended to date, I can represent to the Court, for myself

14  and Miss Bowman have not been great.  And whatever else has

15  been left over has gone to help pay for Doctor Daignault.  So

16  there has not been hundreds of thousands or even thousands and

17  thousands of dollars spent here.  So I would ask the Court not

18  to impose a fine.  She is a single mother.  She's got

19  financial obligations, as represented in the financial

20  statement.  So I would ask you not to impose a fine.

21          Having said that, this is a statement that she has

22  written.  "Judge Gorton, I, Carol Evangelista, accept full

23  responsibility for what I've done.  I am not denying that what

24  I've done was wrong and criminal.  I know when I didn't list

25  the money, signed the paperwork and swore to the trustee that

1  there were no assets, I was wrong in doing so.

2         "I am so sorry.  I feel remorse every waking hour of

3  the day.  I try to live my life like I used to, but it's

4  impossible for me to do that.  I no longer go into any of the

5  businesses in my town.  I do my grocery, CVS and gas shopping

6  out of town.  I no longer go into any of the restaurants in

7  town.  I don't want to run into anyone that I know.  I'm

8  embarrassed and consumed with guilt.  When I enter my

9  neighborhood, I go the long way around so I no longer chance

10  seeing the neighbors that I used to be friendly with.  I'm

11  uncomfortable everywhere I am, always hoping that no one will

12  know that I'm the woman that committed the crime.  I'm

13  embarrassed every time I have to walk into school to pick up

14  my daughter.

15         "My life, as I know it, has changed forever.  I'm

16  having a very difficult time living this way.  I've always

17  tried to set good examples for my children.  I've helped them

18  through the trauma of a divorce, and they have turned out to

19  be wonderfully adjusted children.  It is truly killing me as

20  to what the outcome of this is going to do to them.  Please do

21  not take me away from them.  To be unable to be at their

22  school plays, their birthdays, soccer and baseball games will

23  scar them for life and will affect me deeply.  I love them

24  dearly.  Please allow me to be their mother and participate in

25  their lives like they have always known.  I am so sorry for

 1 | what I have done and will live with this forever.  Thank you.
 2 | Carol Evangelista."
 3 | THE COURT:  Do counsel know of any reason why
 4 | sentence ought not to be imposed at this time?
 5 | MR. BALTHAZARD:  No, Judge.
 6 | MR. ETTENBERG:  No, Judge.
 7 | THE COURT:  Mrs. Evangelista, please stand.  It gives
 8 | this Court no pleasure at all to have to sentence someone in
 9 | your position, Mrs. Evangelista.  This is a very difficult
10 | job.  But when you violate the law and you do so knowingly and
11 | understandingly, you are going to pay the price.  And the
12 | price in this case is going to mean imprisonment.
13 | It would be a much longer imprisonment but for the
14 | extenuating circumstances that have been brought very
15 | effectively to my attention by your lawyer, by the Probation
16 | Department, by the government's lawyer.  If it were not for
17 | the very troubling marriage, divorce and problems that you
18 | have had, you would be going to jail for a much longer period
19 | of time than you are, in fact, going to do.
20 | But you violated a very serious law:  the bankruptcy
21 | laws of this country.  You at least intended to defraud your
22 | creditors out of almost $100,000.  That's just like stealing
23 | $100,000.  Whether you think it is or it isn't, that's what it
24 | is.  Therefore, you will satisfy the requirements of the law.
25 | I sincerely hope that this is the last time you'll

1  ever have any involvement with the law in this sense and that

2  you will be able to take from this experience something

3  positive and make a better life for yourself after you've

4  served this sentence.

5       Pursuant to the Sentencing Reform Act of 1984, it is

6  the judgment that you, Carol Evangelista, are hereby committed

7  to the custody of the Bureau of Prisons, to be imprisoned for

8  a term of twelve months and one day.

9       Upon release from imprisonment, you shall be placed

10 on supervised release for a term of two years.  Within 72

11 hours of release from custody of the Bureau of Prisons, you

12 shall report in person to the district to which you are

13 released.

14      It is further ordered that you shall pay a fine of

15 $2,000.  The fine shall be paid immediately or in accordance

16 with a court-ordered repayment schedule.  The fine is to

17 continue -- is to be continued to be paid until the full

18 amount, including any interest required by law, has been paid.

19 You shall notify the United States Attorney for this district

20 within 30 days of any change of mailing or residence address

21 that occurs while any portion of that fine remains unpaid.

22      While on supervised release, you shall not commit

23 another federal, state or local crime.  You shall refrain from

24 any unlawful use of a controlled substance.  Drug testing

25 conditions are suspended based upon the Court's determination

1    that you pose a low risk of any substance abuse.

2         In addition, you shall comply with the standard

3    conditions that are described in the sentencing guidelines at

4    Section 5D1.3(c) and with the following special conditions:

5    First, you are prohibited from possessing a firearm or other

6    dangerous weapon.

7         Second, you are to pay the balance of the fine in

8    accordance with a court-ordered repayment schedule.

9         Third, you are prohibited from incurring new credit

10   charges or opening additional lines of credit without the

11   approval of the probation officer.

12        Fourth, you are to provide the probation officer

13   access to any requested financial information.

14        And fifth, you are -- the financial information

15   provided to the Probation Office by you may be shared with the

16   Financial Litigation Unit of the United States Attorney's

17   Office.

18        Finally, you are to participate in a mental health

19   treatment program as directed by the United States Probation

20   Office.  You shall be required to contribute to the costs of

21   services for such treatment based upon your ability to pay or

22   the availability of third-party payment.

23        It is further ordered that you shall pay to the

24   United States a special assessment of $100, which shall be due

25   and payable immediately.

52

1          It is further ordered that you shall self-surrender

2     at the institution designated by the Bureau of Prisons four

3     weeks from today, that is, March 23, 2004.

4          Mrs. Evangelista, you have a right to appeal this

5     sentence.  If you choose to appeal, you must do so within ten

6     days.  If you cannot afford an attorney, an attorney will be

7     appointed on your behalf.  Do you understand that?

8          MS. EVANGELISTA:  Yes.

9          THE COURT:  Is there any further business, then, to

10    come before the Court in these proceedings, Mr. Balthazard?

11         MR. BALTHAZARD:  No, your Honor.

12         THE COURT:  Mr. Ettenberg.

13         MR. ETTENBERG:  The only thing I would request,

14    Judge, is that there be a judicial recommendation that any

15    facility that she be designated to be closest to her family

16    within the confines of New England, if possible.

17         THE COURT:  Yes.  The Court will recommend that she

18    be confined in the facility of the appropriate security level

19    nearest to her home.  That is likely to be either Framingham

20    or Danbury, Connecticut.

21         Anything further?

22         MR. ETTENBERG:  No, your Honor.

23         THE COURT:  We're adjourned.

24    (Whereupon, at 4:40 p.m. the hearing concluded.)

25

53

C E R T I F I C A T E

I, Cheryl Dahlstrom, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 52, constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 03-40034, United States of America vs. Carol Evangelista.

_Cheryl Dahlstrom_