1

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA    )
                            )
                            )
vs.                         )    CR No. 03-40034
                            )
                            )
CAROL EVANGELISTA           )


BEFORE:  The Honorable Nathaniel M. Gorton


                            PLEA


APPEARANCES:

     OFFICE OF THE UNITED STATES ATTORNEY (By: Mark
     Balthazard, AUSA), One Courthouse Way, Boston,
     Massachusetts 02210.  On Behalf of the Government.

     GOULD & ETTENBERG (By: Peter L. Ettenberg, Esq.), 370
     Main Street, Worcester, Massachusetts 01608.  On
     Behalf of the Defendant.


                              United States District Court
                              Courtroom No. 2
                              595 Main Street
                              Worcester, MA 01608
                              Wednesday, November 20, 2003
                              4:10 P.M.


                       Cheryl Dahlstrom
                     Official Court Reporter
                 Moakley United States Courthouse
                 One Courthouse Way, Room 3209
                        Boston, MA 02210
              Mechanical Steno - Transcript by Computer
```

2

P R O C E E D I N G S

1
2    THE CLERK: Case No. 03-40034, United States vs.
3    Carol Evangelista. Counsel please note your appearance for
4    the record.
5    MR. BALTHAZARD: Good afternoon, your Honor. Mark
6    Balthazard for the government.
7    THE COURT: Good afternoon again, Mr. Balthazard.
8    MR. ETTENBERG: Good afternoon, your Honor. Peter
9    Ettenberg for Carol Evangelista.
10   THE COURT: Good afternoon to you, Mr. Ettenberg and
11   Miss Evangelista. Miss Cuascut from Pretrial Services is also
12   with us.
13   We're here, as I understand it, Mr. Ettenberg, to
14   take a waiver of Indictment and a plea from your client, is
15   that right?
16   MR. ETTENBERG: Yes.
17   THE COURT: And if Miss Evangelista will please take
18   the witness stand, you may join her if you wish.
19   (Defendant sworn.)
20   THE CLERK: Please be seated.
21   THE COURT: Good afternoon again, Miss Evangelista.
22   Do you understand the nature of the charge against you?
23   MS. EVANGELISTA: Yes.
24   THE COURT: Would you just tell me, in your own
25   words, what you understand the charges to be.

1       MS. EVANGELISTA: Bankruptcy fraud.

2       THE COURT: All right. You also know that you have a constitutional right to be charged by an Indictment of a grand jury but you can waive that right and consent to be charged by what is called an Information of the U.S. Attorney? Do you understand that?

7       MS. EVANGELISTA: Yes.

8       THE COURT: Now instead of an Indictment, these felony charges against you have been brought by the United States Attorney by the filing of an Information. Unless you waive indictment, you may not be charged with a felony unless a grand jury finds by return of an Indictment that there is probable cause to believe that a crime has been committed and that you have committed it.

15      If you do not waive Indictment, the government may present the case to the grand jury and request it to indict you. A grand jury is composed of at least 16 and not more than 23 persons, and at least 12 of those grand jurors must find that there is probable cause to believe that you have committed the crime with which you are charged before you can be indicted. And the grand jury might or might not indict you.

23      If you waive Indictment by the grand jury, the case will proceed against you on the United States Attorney's Information just as though you had been indicted. Do you

1  understand all of that?
2  　　　MS. EVANGELISTA: Yes.
3  　　　THE COURT: Have you discussed the matter of waiving
4  your right to an Indictment by a grand jury with Mr. Ettenberg
5  as your lawyer?
6  　　　MS. EVANGELISTA: Yes.
7  　　　THE COURT: Have any threats or promises been made to
8  make you waive your right to Indictment by a grand jury?
9  　　　MS. EVANGELISTA: No.
10 　　　THE COURT: Do you now wish here in open court to
11 waive your right to Indictment by a grand jury?
12 　　　MS. EVANGELISTA: Yes.
13 　　　THE COURT: Mr. Ettenberg, do you see any reason why
14 your client ought not make such a waiver?
15 　　　MR. ETTENBERG: I do not.
16 　　　THE COURT: All right. It is this Court's finding
17 that the defendant's waiver of Indictment is made knowingly
18 and voluntarily. The defendant's waiver of Indictment is,
19 therefore, accepted by this Court.
20 　　　Miss Evangelista, do you understand that you are now
21 under oath, and that if you answer any of my questions
22 falsely, those answers may later be used against you in a
23 prosecution for perjury or making a false statement? Do you
24 understand that?
25 　　　MS. EVANGELISTA: Yes.

1     THE COURT: Would you please state your full name for
2  the record.
3     MS. EVANGELISTA: Carol Lee Evangelista.
4     THE COURT: How old are you, Miss Evangelista?
5     MS. EVANGELISTA: Forty-six.
6     THE COURT: What is your educational background?
7     MS. EVANGELISTA: High school.
8     THE COURT: Did you graduate from high school?
9     MS. EVANGELISTA: Yes.
10    THE COURT: Whereabouts?
11    MS. EVANGELISTA: Marion High School.
12    THE COURT: In Worcester. Have you received a --
13  before I get to that, have you ever been treated for any
14  mental illness or addiction to narcotic drugs of any kind?
15    MS. EVANGELISTA: No.
16    THE COURT: Are you presently under the influence of
17  any drug, medication or alcoholic beverage of any kind?
18    MS. EVANGELISTA: No.
19    THE COURT: Have you received a copy of the
20  Information pending against you in this case, that is, the
21  written charges made against you? And have you discussed
22  those charges and the case in general with Mr. Ettenberg as
23  your lawyer?
24    MS. EVANGELISTA: Yes.
25    THE COURT: Are you fully satisfied with the counsel,

1  representation and advice given to you by Mr. Ettenberg as
2  your lawyer in this case?
3           MS. EVANGELISTA:  Yes.
4           THE COURT:  Now, I understand there is no written
5  plea agreement, is that right, Mr. Balthazard?
6           MR. BALTHAZARD:  Your Honor, just to make it clear,
7  the parties had reached an agreement and there was a signed
8  plea agreement.  I've been informed that Miss Evangelista
9  would prefer to proceed without the benefits or the
10 obligations of that plea agreement, so it is not being filed
11 and we will proceed without it.
12          THE COURT:  Mr. Ettenberg.
13          MR. ETTENBERG:  Yes, Judge, that's correct.
14          THE COURT:  All right.  Has anyone, Miss Evangelista,
15 made any promise or assurance to you of any kind in an effort
16 to make you plead guilty in this case?
17          MS. EVANGELISTA:  No.
18          THE COURT:  Do you understand that the offense to
19 which you are pleading guilty is a felony, and that if your
20 plea is accepted, you will be judged guilty of that offense,
21 and that such adjudication may deprive you of valuable civil
22 rights such as the right to vote, the right to hold public
23 office, the right to serve on a jury, the right to possess any
24 kind of firearm?  Do you understand that?
25          MS. EVANGELISTA:  Yes.

1        THE COURT: All right. Mr. Balthazard, would you
2   please inform the defendant of the maximum possible penalties
3   involved in these charges against her.
4        MR. BALTHAZARD: Yes, your Honor. It's a one-count
5   Information, and on that count the maximums are five years in
6   prison, a $250,000 fine, $100 special assessment, three years
7   of supervised release and restitution.
8        THE COURT: Do you understand, Miss Evangelista, the
9   possible consequences of your plea here this afternoon?
10       MS. EVANGELISTA: Yes.
11       THE COURT: Now, under the sentencing -- if at any
12  time, Miss Evangelista, you want to talk with your lawyer, you
13  can do so. Just let me know and we'll stop the proceedings,
14  and you can privately talk with your own attorney. Do you
15  understand that?
16       MS. EVANGELISTA: Yes.
17       THE COURT: So you don't have to worry about
18  answering something quickly. You can take your time.
19       Now, under the Sentencing Reform Act of 1984, the
20  United States Sentencing Commission has issued guidelines for
21  judges to follow when imposing sentences in criminal cases.
22  Have you and Mr. Ettenberg talked about how those guidelines
23  may apply in your specific case?
24       MS. EVANGELISTA: Yes.
25       THE COURT: Do you understand that the Court will not

1  be able to determine what guideline applies until after a
2  Presentence Report has been prepared for me by the Probation
3  Department, and you and the government have had an opportunity
4  to challenge the facts that are set forth in that report?  Do
5  you understand that?
6       MS. EVANGELISTA:  Yes.
7       THE COURT:  And do you further understand that after
8  it has been determined what guideline applies, the judge -- in
9  this case that means me -- has the authority in some
10 circumstances to impose a sentence that is more severe or less
11 severe than those called for in the guidelines?  Do you
12 understand that?
13      MS. EVANGELISTA:  Yes.
14      THE COURT:  Do you further understand that under some
15 circumstances you or the government may appeal to a higher
16 court any sentence that I impose?
17      MS. EVANGELISTA:  Yes.
18      THE COURT:  Finally, do you understand that parole
19 has been abolished, and if you are sentenced to be imprisoned,
20 you will not be released on parole?  Do you understand that?
21      MS. EVANGELISTA:  Yes.
22      THE COURT:  Miss Evangelista, do you understand
23 generally that you have a right to plead not guilty to any
24 charge against you and to persist in that plea, and that you
25 would then have the right to a trial by jury, during which you

1  would have the right to be represented by a lawyer in your
2  defense; you would have the right to see and hear all of the
3  witnesses and have them cross-examined in your defense; you
4  would have a right on your own part to decline to testify,
5  unless you voluntarily agree to do so, and you would have the
6  right to the issuance of subpoenas or compulsory process to
7  compel the attendance of witnesses to testify in your defense?
8  Do you understand all of that?
9          MS. EVANGELISTA:  Yes.
10         THE COURT:  And do you further understand that by
11 entering a plea of guilty, if that plea is accepted by this
12 Court, there will be no trial; and you will have waived or
13 given up your right to a trial by jury as well as those other
14 rights associated with such a trial that I just described?  Do
15 you understand that?
16         MS. EVANGELISTA:  Yes.
17         THE COURT:  Then, Mr. Balthazard, will you please
18 inform the defendant and the Court of exactly what facts the
19 government would prove if this matter were to go to trial.
20         MR. BALTHAZARD:  Yes, your Honor.  If the case were
21 to go to trial, the government would present evidence that
22 Miss Evangelista lives in West Boylston, Massachusetts.
23         In or about August of 2001, she reached a divorce
24 settlement with her ex-husband which required him to pay her
25 $110,000 plus $1,000 per month for child support and an

1   additional $1,000 per month, although it's not clear if that's
2   for alimony or some other payment.
3       On August 6 of 2001, her ex-husband issued two checks
4   totaling $110,000, made payable to Ms. Evangelista's divorce
5   attorney.  Later that month, August 28th, at Ms. Evangelista's
6   direction, the attorney issued a check in the amount of
7   $94,500 to Ms. Evangelista's father.  He deposited that check
8   into a joint personal checking account with her mother, and
9   several days later her mother issued a check for $90,000,
10  which was used to buy a Certificate of Deposit at the Spencer
11  Savings Bank for the benefit of Ms. Evangelista.
12      The next month, on September 20, 2001, Ms.
13  Evangelista filed a Chapter 7 bankruptcy petition in
14  Worcester.  She was represented by counsel in that case.  That
15  was case 01-45859.  She did not tell her bankruptcy attorney
16  about the money she had received in the divorce settlement,
17  nor that she was receiving $1,000 in additional payments,
18  payments above and beyond the child support payments from her
19  ex-husband.
20      THE COURT:  You mean $1,000 a month?
21      MR. BALTHAZARD:  She was actually being paid $2,000 a
22  month.  She then signed bankruptcy schedules which failed to
23  disclose that she had received the 110,000 and also failed to
24  disclose the 90,000 in cash that was being held by her parents
25  for her benefit.  In addition, on her Bankruptcy Schedule I of

1  current income, she failed to disclose that she was receiving
2  $1,000 in payments above and beyond the $1,000 in child
3  support.  The evidence of that would be the actual checks that
4  were issued by her husband to her.
5        Ms. Evangelista signed those bankruptcy schedules and
6  Statement of Financial Affairs under the penalties of perjury.
7  Directly under her signature on each of those documents was a
8  notice that making a false statement or concealing property is
9  a crime punishable by imprisonment and a fine.
10       The next month, on October 22, 2001, Miss Evangelista
11 testified under oath at a bankruptcy meeting of creditors.
12 Again, she was represented by counsel at that meeting.  She
13 testified that -- identified her signature on the schedules,
14 on the Statement of Financial Affairs.  She stated that she
15 had reviewed them with her attorney and that they were
16 accurate.
17       During the meeting she was asked about her divorce.
18 She stated that she was living for three years rent-free in
19 the former marital home and that, thereafter, it would revert
20 to her husband.  She stated further that he owed her no money
21 other than the $1,000 per month child support which she had
22 listed on her bankruptcy schedules.  She didn't disclose the
23 $110,000 payment that she had received for her interest in the
24 home, nor the 90,000 being held by her parents, nor the
25 additional $1,000 per month that she was being paid by her

1  husband.

2  Following that meeting the bankruptcy trustee filed a
3  report with the bankruptcy court that there were no assets for
4  distribution to creditors and requesting the case be closed.
5  The bankruptcy court entered an order discharging Miss
6  Evangelista's debts and closed the case.

7  Nearly a year later, in August of 2002, the
8  bankruptcy trustee received a copy of Ms. Evangelista's
9  divorce judgment and learned for the first time about the
10 $110,000 payment.  The trustee, as a result, filed a motion to
11 reopen the bankruptcy case.

12 In early 2003, the FBI approached Ms. Evangelista to
13 ask about the concealed funds.  After that, Ms. Evangelista
14 filed amended schedules in the bankruptcy case admitting that
15 her parents were holding funds for her, and she did later turn
16 over the proceeds of that -- of the CD account, or she was
17 intending to -- strike that.  I believe those funds were
18 ultimately turned over to the bankruptcy trustee.

19 That's the evidence that the government would have
20 presented for the case if it were to go to trial, your Honor.

21 THE COURT:  Miss Evangelista, do you have anything to
22 add to what Mr. Balthazard says the government would be able
23 to prove if this matter were to go to trial?

24 MS. EVANGELISTA:  No.

25 THE COURT:  Do you disagree with anything that he

```
 1    says the government would be able to prove?
 2           MS. EVANGELISTA:  No.
 3           THE COURT:  That being the case, I would ask the
 4    deputy clerk to inquire of the defendant as to how she now
 5    wishes to plead to the Information.  And, Miss Evangelista,
 6    will you please stand.
 7           THE CLERK:  Carol Evangelista, on Criminal Action No.
 8    03-40034, you are charged in a one-count -- you are charged in
 9    Count 1 of a one-count Information with bankruptcy fraud
10    concealment, in violation of Title 18, United States Code,
11    Section 152, 1.  What say you as to Count 1, guilty or not
12    guilty?
13           MS. EVANGELISTA:  Guilty.
14           THE COURT:  Thank you.  You may be seated.  That
15    being so, it is the finding of the Court in the case of the
16    United States vs. Carol Evangelista, that the defendant is
17    fully competent and capable of entering an informed plea and
18    that her plea of guilty is a knowing and voluntary plea,
19    supported by an independent basis in fact, containing each of
20    the essential elements of the offenses charged.  Her plea is,
21    therefore, accepted, and she is now adjudged guilty of that
22    offense.
23           Miss Evangelista, a written Presentence Report will
24    be prepared for me by the Probation Department, and you will
25    be asked to give information for that report.  Your lawyer may
```

14

1   be present if you wish.  You and your lawyer will be given the
2   opportunity to read that report before the sentencing hearing.
3   And at that hearing you and your lawyer will be afforded the
4   opportunity to speak.  Do you understand all of that?
5           MS. EVANGELISTA:  Yes.
6           THE COURT:  All right.  Then the sentencing will take
7   place on Thursday, February 12, 2004, at 3 p.m.  Do you have
8   any known conflict at this stage, Mr. Ettenberg?
9           MR. ETTENBERG:  The 12th at 4?
10          THE COURT:  Thursday, the 12th of February, at 3 p.m.
11          MR. ETTENBERG:  Could I just inquire?
12          THE COURT:  Yes.
13  (Discussion held off the record.)
14          THE COURT:  I think school vacation is the following
15  week.
16          MR. ETTENBERG:  It rolls.
17          THE COURT:  I know.
18          MR. ETTENBERG:  That's fine, Judge.  If there's a
19  problem, we can change it later.
20          THE COURT:  Mr. Balthazard.
21          MR. BALTHAZARD:  That's fine, your Honor.
22          THE COURT:  All right.  Now, since this is the
23  defendant's first appearance, there have been no conditions
24  thus far established.  But I have from the Pretrial Services a
25  proposed report as to what the conditions of release are to

1   be.
2           The defendant is to be released on her personal
3   recognizance.  She is to report to Pretrial Services as
4   directed.  Her travel is restricted to Massachusetts and Rhode
5   Island for the purpose of attending a wedding during the
6   November 21, 2003, weekend.  She is to surrender any passport
7   and not apply for any other.  She is not to possess a firearm
8   or other destructive device.  She is not to use excessive use
9   of alcohol and no use of illegal drugs.  She's to maintain or
10  actively seek employment and to notify Pretrial Services of
11  any new arrest or any change of residence within 24 hours.
12          Are those the conditions?
13          MS. CUASCUT:  They are, your Honor.
14          MR. ETTENBERG:  Yes.
15          THE COURT:  Everybody understands that?
16          Now, Miss Evangelista, for you, you understand that
17  failure to appear at your sentencing on Thursday, February 12,
18  2004, at 3 p.m., in this courthouse is a criminal offense for
19  which you could be sentenced to imprisonment and that the
20  conditions on which you are to be released and which I just
21  set forth in the record are serious and that any violation of
22  those conditions can be -- that the result of a violation of
23  any of those conditions can be severe.  Do you understand
24  that?
25          MS. EVANGELISTA:  Yes.

1        THE COURT: Is there any further business, then, to
2   come before the Court in these proceedings, Mr. Balthazard?
3        MR. BALTHAZARD: The only thing, your Honor, I
4   understand that Ms. Evangelista will be meeting with the FBI
5   agent after this to be processed. Is that correct?
6        MR. ETTENBERG: Yes.
7        THE COURT: All right. Then you are, before you
8   leave here today, Miss Evangelista, to report to the FBI
9   agent. Does she need to see Pretrial Services?
10       MS. CUASCUT: I'll meet with her immediately, your
11  Honor.
12       THE COURT: And also Pretrial Services. We're
13  adjourned. Thank you.
14  (Whereupon, at 4:34 p.m. the hearing concluded.)

C E R T I F I C A T E

    I, Cheryl Dahlstrom, Official Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 16, constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Criminal Action No. 03-40034, United States of America vs. Carol Evangelista.

_____Cheryl Dahlstrom_____